THE STATE OF WEST VIRGINIA AT THE RELATION OF THE
KANAWHA COUNTY BUILDING COMMISSION, *a public
corporation of the State of West Virginia, Petitioner*

*v.*

VINCENT M. PATERNO, PRESIDENT OF THE KANAWHA COUNTY
BUILDING COMMISSION, *Respondent*

(No. 13805)

Decided March 22, 1977.

*Jackson, Kelly, Holt & O'Farrell, James K. Brown, Lee O. Hill, Gregory R. Gorrell* for relator.

*Goodwin, Goodwin, Bryan & Lobert, Joseph R. Goodwin, Stephen P. Goodwin* for respondent.

McGRAW, JUSTICE:

Petitioner, Kanawha County Building Commission, invokes the original mandamus jurisdiction of this Court, praying for the issuance of a peremptory writ of mandamus commanding the respondent, Vincent M. Paterno, as President of the Kanawha County Building Commission, to forthwith execute an agreement, dated August 25, 1976, between the County Commission of Kanawha County and said Building Commission, whereby the Building Commission would construct a county judicial

annex building to be leased to the said County Commission on terms stated in and pursuant to provisions of the agreement. *West Virginia Constitution*, Article VIII, § 3; Rule XVIII, Rules of Practice in the Supreme Court of Appeals. Respondent has demurred and filed his answer to petitioner's application for the writ. Petitioner's verified application sets forth circumstances which warrant invocation of the original jurisdiction of this Court instead of applying for the writ in the Circuit Court of Kanawha County, one of the beneficiaries of the projected county judicial annex contemplated in this litigation. Petitioner also avers that the application "raises only issues of law and not issues of fact and the taking of evidence will not be necessary for a proper disposition" of this cause.

Paragraph 17 of petitioner's application asserts:

"The execution of the aforesaid Agreement by Respondent is an action which the Building Commission had the clear legal right and power to authorize and direct said Respondent to perform and is a purely ministerial act involving no exercise of discretion by said Respondent."

In paragraph 17 of respondent's answer, he states:

"The Respondent, upon information and belief, denies that the Kanawha County Building Commission can lawfully authorize and direct the execution of the agreement between the Building Commission and the Kanawha County Commission whereby the Building Commission would be obligated to construct a proposed Judicial Annex and thereafter lease the Judicial Annex to the County Commission, and whereby, pursuant to such agreement, the County Commission will dedicate and pledge all monies theretofore and thereafter deposited in the County Coal Severance Tax Revenue Fund solely to the payment of rentals to the Building Commission for the leasing of the Judicial Annex; however, if the statute in question (Chapter 11, Article 13, § 2-1 of the Code of West Virginia, 1931, as amended) and if each and all of the determinations made and the

actions authorized and directed to be taken by and pursuant to the August 25, 1976, Order are valid and in full conformity with all the requirements of the laws and the Constitution of the United States of America, then he admits the allegations of Paragraph No. 17 and further admits that the Building Commission has the clear right to authorize and direct him to execute the aforesaid agreement between the Building Commission and the County Commission and that he has the clear ministerial duty to execute said agreement as directed." *

The pleadings and the briefs of counsel well define the legal issues—primarily constitutional issues—to be resolved.

The County Building Commission law was enacted as Chapter 11, Acts of the Legislature, Regular Session of 1968, and is now W. Va. Code, Chapter 8, Article 33, as last amended in 1976. Section 4 defines the powers and authority of a building commission in the following language:

"Each commission shall have plenary power and authority to:

(a) Sue and be sued;

(b) Contract and be contracted with;

(c) Adopt, use and alter a common seal;

(d) Make and adopt all necessary, appropriate and lawful bylaws and rules and regulations pertaining to its affairs;

(e) Elect such officers, appoint such committees and agents and employ and fix the compen-

---

* It will be noted that respondent, in ¶ 17 of his answer as quoted, questions the transaction's validity under and conformity with "all the requirements of the laws and the Constitution of the United States of America." His demurrer predicates his defense on provisions of the W. Va. Constitution, as does his brief in opposition to issuance of the writ of mandamus. Since no federal constitutional law issues are noted or pressed in respondent's defense, no other consideration thereto is deemed necessary herein.

sation of such employees and contractors as may be necessary for the conduct of the affairs and operations of the commission;

(f) (1) Acquire, purchase, own and hold any property, real or personal, and (2) acquire, construct, equip, maintain and operate public buildings, structures, projects and appurtenant facilities, of any type or types for which the governmental body or bodies creating such commission are permitted by law to expend public funds (all hereinafter in this article referred to as facilities);

(g) Apply for, receive and use grants-in-aid, donations and contributions from any source or sources including but not limited to the United States of America, or any department or agency thereof, and accept and use bequests, devises, gifts and donations from any source whatsoever;

(h) Sell, encumber or dispose of any property, real or personal;

(i) Issue negotiable bonds, notes, debentures or other evidences of indebtedness and provide for the rights of the holders thereof, incur any proper indebtedness and issue any obligations and give any security therefor which it may deem necessary or advisable in connection with exercising powers as provided herein;

(j) Raise funds by the issuance and sale of revenue bonds in the manner provided by the applicable provisions of article sixteen [§ 8-16-1 et seq.] of this chapter, without regard to the extent provided in section five [§ 8-33-5] of this article, to the limitations specified in said article sixteen, it being hereby expressly provided that for the purpose of the issuance and sale of revenue bonds, each commission is a "governing body" as that term is used in said article sixteen only;

(k) Subject to such reasonable limitations and conditions as the governmental body or all of the governmental bodies creating and establishing such building commission may prescribe by ordi-

nance or by order, exercise the power of eminent domain in the manner provided in chapter fifty-four [§54-1-1 et seq.] of this Code for business corporations, for the purposes set forth in subdivision (f) of this section, which purposes are hereby declared public purposes for which private property may be taken or damaged;

(l) Lease its property or any part thereof, for public purposes, to such persons and upon such terms as the commission deems proper, but when any municipality or county commission is a lessee under any such lease, such lease must contain a provision granting to such municipality or county commission the option to terminate such lease during any fiscal year covered thereby; and

(m) Do all things reasonable and necessary to carry out the foregoing powers."

Respondent, as President of the Kanawha County Building Commission, in paragraphs 1, 2, 3 and 4 of his demurrer, and in paragraphs 18-a, 18-b, 18-c and 18-d of his answer, bases his refusal to execute the agreement on the following four propositions of law:

"1. The acquisition and construction by the Building Commission of a Judicial Annex through the issuance of bonds payable from revenues derived from Coal Severance Tax would create a prohibited indebtedness of the State; and accordingly the provisions of Chapter 11, Article 13, Section 2-1 of the West Virginia Code which would authorize and empower the County Commission of Kanawha County to expend revenues collected from the Coal Severance Tax for 'such public purposes as the County Commission or governing body shall determine to be in the best interest of the people of its respective county . . .' are null, void and of no force and effect because the same violate Section 4 of Article X of the Constitution of West Virginia.

"2. The distribution of Coal Severance Tax revenues collected by the State pursuant to the Act is an illegal grant of the credit of the State to,

and in aid of, Kanawha County in contravention of Section 6 of Article X of the Constitution of West Virginia.

"3. The acquisition and construction by the Building Commission of a Judicial Annex through the issuance of municipal bonds under Code § 8-16-1 et seq. to be paid from revenues from the Coal Severance Tax creates an prohibited indebtedness under Section 8 of Article X of the Constitution of West Virginia.

"4. The dedication and pledge of said coal severance tax revenues solely to the payment of rentals to the Building Commission for the leasing of the Judicial Annex pursuant to the Agreement violates Section 1 of Article VI of the Constitution of the State of West Virginia."

In part 4 of his brief, respondent reasons that the "proper and necessary parties for a lawful determination of all of the issues in the present case are not before the Court." He reasons that "It was the action by the Kanawha County Commission, and not any action on the part of either the Petitioner or Respondent, which gives rise to the present predicament." His position is that the present litigants are not the proper parties to test judicially the real issues of constitutional law now presented to the Court.

The Kanawha County Building Commission was created by the Kanawha County Commission by order entered on June 27, 1975. The Building Commission so created is a public corporation and is given perpetual existence by statute, W. Va. Code, 8-33-2. The Building Commission has no authority to levy or collect taxes, but has authority to contract and to be contracted with, to construct and maintain buildings, to issue bonds, and to lease its properties for public purposes. In this case, the Building Commission is to acquire land, to construct thereon a judicial annex, to issue and sell negotiable revenue bonds, and to lease the judicial annex to the Kanawha County Commission, on a rental basis for pub-

lic purposes—for use as a part of the county's courthouse and other government facilities.

The basic issues are whether, under the law, petitioner has a clear right to authorize and direct respondent, as President of the Building Commission, to execute the agreement, dated August 25, 1976, between the County Commission and the Building Commission, and whether respondent has a clear ministerial duty to execute the agreement as directed. Respondent's position is that resolution of these issues depends on a determination of issues of constitutional law as presented in his responses to petitioner's application for a writ of mandamus.

Respondent's propositions of law 1, 2 and 3, in substance, state his position that the state's allocation and payment of coal severance tax revenues to the Kanawha County Commission for public purposes, pursuant to W. Va. Code, 11-13-21, as last amended in 1976, and the County Commission's dedication of the coal severance tax revenues from its County Severance Tax Revenue Fund to payment of the rentals for the judicial annex pursuant to a lease agreement with the Building Commission, as lessor, are acts and conduct in violation of § 4, § 6 and § 8 of Article X of the *West Virginia Constitution*. Section 4 limits contracting of state debts, § 6 prohibits granting of the state's credit to or in aid of a county, corporation and other entities, and § 8 limits contracting of county debts.

The coal severance tax statute here involved was enacted pursuant to *West Virginia Constitution*, Article X, Section 6a(2), as ratified at the general election held on November 8, 1972. *Code*, 11-13-21(b). Section 6a of the Constitution provides:

> "Notwithstanding the provisions of section six of this article, (1) the legislature may appropriate state funds for use in matching or maximizing grants-in-aid for public purposes from the United States or any department, bureau, commission or agency thereof, or any other source, to any coun-

ty, municipality or other political subdivision of the State, under such circumstances and subject to such terms, conditions and restrictions as the legislature may prescribe by law, and (2) the legislature may impose a state tax or taxes or dedicate a state tax or taxes or any portion thereof for the benefit of and use by counties, municipalities or other political subdivisions of the State for public purposes, the proceeds of any such imposed or dedicated tax or taxes or portion thereof to be distributed to such counties, municipalities or other political subdivisions of the State under such circumstances and subject to such terms, conditions and restrictions as the legislature may prescribe by law."

This amendment to the *Constitution* was adopted in 1972, long after § 4, § 6 and § 8 of Article X were adopted, and modifies the state debt, state credit and county debt provisions about which respondent expresses concern. In 16 Am. Jur. 2d *Constitutional Law*, ¶69 (1964), an accepted principle of law is well stated in the following language:

"If there is a real inconsistency between a constitutional amendment and an antecedent provision, the amendment must prevail because it is the latest expression of the will of the people. In such a case there is no room for the application of the rule as to harmonizing inconsistent provisions. If it covers the same subject as was covered by a previously existing constitutional provision, thereby indicating an intent to substitute it in lieu of the original, the doctrine of implied repeal, though not favored, will be applied and the original provision deemed superseded."

The plain language of § 6a presents no "irreconcilable conflict" as contemplated in *Berry v. Fox*, 114 W. Va. 513, 173 S.E. 896 (1934). Sections 6 and 6a are parts of the Constitution, but Section 6a, in plain and clear language, "as the last word from the people on the subject under consideration, should be given controlling effect." Syllabus, point 3, *Berry v. Fox, supra.*

The 1976 coal severance tax statute provides in ¶ (b) that "such additional tax is imposed pursuant to provisions of Section 6a, Article X of the West Virginia Constitution. . . . "

Another principle of law is well stated in Syllabus Point 1, in *State ex rel. West Virginia Housing Development Fund v. Waterhouse*, ___ W. Va. ___, 212 S.E.2d 724 (1974), in the following language:

> "When the constitutionality of a statute is challenged, every reasonable construction must be resorted to by the courts to sustain its validity and any reasonable doubt must be resolved in favor of the constitutionality of the legislative act in question."

Respondent's position, that his refusal to execute the agreement is based on inhibitions and provisions of § 4, § 6 and § 8 of Article X of the *West Virginia Constitution*, is not tenable.

The additional tax revenues produced by the 1976 coal severance tax statute, when allocated and distributed to the counties and municipalities, "may be expended by the County Commission or governing body of the municipality for such public purposes as the County Commission or governing body shall determine to be in the best interest of the people of its respective county or municipality." W. Va. Code, 11-13-21(h).

At a regular session of the County Commission of Kanawha County, on August 25, 1976, when faced with required extension and expansion of circuit court housing and facilities pursuant to requirements of the Judicial Reorganization Amendment to the *Constitution*, as ratified in 1974, the Commission adopted a motion and entered an order, stating in part:

> "(g) That the expenditure of moneys in the coal severance tax revenue fund for the purpose of acquiring a new Kanawha County Courthouse and facilities appurtenant thereto by lease is a public purpose and is in the best interest of the

people of Kanawha County." Exhibit A, Petitioner's application.

In ¶ 4 of the same motion and order, the County Commission "dedicated and pledged" the moneys in the Coal Severance Tax Revenue Fund "to the payment of rentals to the Building Commission for the leasing of the judicial annex." The agreement, dated August 25, 1976, between the County Commission and the Building Commission, in reference to the lease of the judicial annex, provides that the county reserved "the right, at its option, to terminate the lease during any fiscal year of the county covered thereby." We find no constitutional infirmity in the County Commission's action under Article VI, Section 1, or Article X, Section 8 of the *West Virginia Constitution*. In *State ex rel. West Virginia Housing Development Fund v. Waterhouse, supra,* Syllabus, point 7, this Court held:

> "A legislative determination of what is a public purpose will not be inferfered with by the courts unless the judicial mind conceives it to be without reasonable relation to the public interest."

No indebtedness or obligation of the Building Commission is a debt of the County Commission. The Building Commission statute, W. Va. Code, 8-33-5, provides:

> "No constitutional or statutory limitation with respect to the nature or amount of or rate of interest on indebtedness which may be incurred by municipalities, counties or other public or governmental bodies shall apply to the indebtedness of a commission. No indebtedness of any nature of a commission shall constitute an indebtedness of any municipality or county creating and establishing such commission or a charge against any property of said municipalities or counties. No indebtedness or obligation incurred by any commission shall give any right against any member of the governing body of any municipality or any member of the county commission of any county or any member of the board of any commission. The rights of creditors of any commission shall

be solely against the commission as a corporate body and shall be satisfied only out of property held by it in its corporate capacity."

A legislative declaration that a state, county or municipal debt is not created by a statute is not conclusive or binding on a court. Whether such a debt is created by a statute is a judicial question, not a question for legislative determination. *State ex rel. Hall v. Taylor*, 154 W.Va. 659, 178 S.E.2d 48 (1970). As presented and developed in this transaction, we find and conclude that the Building Commission's indebtedness is not a debt of the county or state. The County Commission in time may not be a recipient of coal severance tax revenues, perhaps because of some economic or catastrophic conditions or legislative action. The County Commission reserves the right, at its option, to terminate the proposed lease during any county fiscal year covered by the lease. The Legislature enacted the coal severance tax law pursuant to permissive language in § 6a of Article X of the *Constitution* and may in time turn to other souces of revenue or provide for allocation and distribution of coal severance tax revenues, in whole or in part, to other state needs. In any such event, the County Commission may well need, use and occupy the Judicial Annex and, if so, will be obliged to pay the rentals required by the lease agreement comtemplated. However, in addition to the dedication of the county's allocation of the coal severance tax revenues to payment of the rentals, the county proposes to dedicate other "funds derived from rentals or other payments received from other governmental bodies, federal, state or local and the agencies thereof, by virtue of any subleasing of the Project" and other moneys received by the County Commission, but not including county tax levy receipts. Resolution of issues relating to available revenues and means of finance, if such may arise, is outside and beyond the purview of the present judicial determination. In this transaction, upon careful review and consideration of the record, in the light of relevant and pertinent provisions of the *Constitution* and statutes and rules and principles of law relat-

ing thereto, we find no constitutional infirmities inhibiting the execution of the agreement by respondent.

Respondent reasons that the "proper parties are not before court"—that it "was the action by the Kanawha County Commission, and not any action on the part of either the Petitioner or Respondent which gives rise to the present predicament." He states in his brief that "Neither the Petitioner nor the Respondent had, (1) anything to do with the allocation of the funds to the county; and (2) anything to do with the determination of the use of the funds. Of course, all of this assumes that the Coal Severance Tax Act is, in fact, constitutional in the first instance."

Respondent's position in substance is that the transaction is unconstitutional under provisions of Article VI, Section 1, and Article X, Sections 4, 6 and 8 of the *West Virginia Constitution*. We do not so find. The basic issues remaining are whether petitioner, the Kanawha County Building Commission, has a clear right to authorize and direct respondent to execute the August 25, 1976 agreement between the County Commission of Kanawha County and Kanawha County Building Commission, and whether the respondent, as President of the Kanawha County Building Commission, has a clear ministerial duty to execute the agreement. To resolve these issues, no other party litigants are necessary or proper parties. *State ex rel. West Virginia Housing Development Fund v. Waterhouse, supra, State ex rel. West Virginia Housing Development Fund v. Copenhaver,* 153 W. Va. 636, 171 S.E.2d 545 (1969).

Upon the record before the Court, and consistent with the principles and considerations herein discussed, we find no constitutional infirmities in the statutes and no illegalities in the action of the County Commission and the Building Commission, or in the proposed agreement. Accordingly, the writ of mandamus requiring the respondent to perform his nondiscretionary duty as prayed for is awarded.

*Writ awarded.*