JAY WATTS

*v.*

OREL J. SKEEN, *Warden, Etc.*

(No. 10121)

Submitted April 12, 1949. Decided May 10, 1949.

KENNA, JUDGE, concurring.

*Martin Brown,* for plaintiff in error.

*Ira J. Partlow,* Attorney General, *W. C. Marland,* Assistant Attorney General, for defendant in error.

RILEY, JUDGE:

Jay Watts prosecutes error to a judgment of the Circuit Court of Marshall County in a habeas corpus proceeding in which he was petitioner and Orel J. Skeen, Warden of the West Virginia Penitentiary, was respondent. On the hearing in the circuit court the respondent's motion to quash was sustained, the petition dismissed and petitioner remanded to the custody of respondent.

The petition in habeas corpus, sworn to on September 11, 1948, charges that the petitioner had been indicted in the Common Pleas Court of Cabell County for (1) breaking and entering, (2) entering without breaking, and (3) the larceny of certain goods, chattels and property of one H. H. Ashmore; that when the case was called a plea of "not guilty" was entered to the count of breaking and entering; that issue was joined thereon; that after hearing the evidence the jury returned a verdict of "guilty as charged in the second count of this indictment"; that later an indeterminate sentence of from one to ten years, to begin on October 28, 1940, was entered; that defendant expressing a desire to apply to the circuit court for a writ of error and supersedeas moved for a stay of execution; and that later Watts appeared and announced that he did not care to further prosecute his appeal and submitted himself to the jurisdiction and custody of the court to answer the sentence theretofore imposed.

It is further charged in the foregoing petition that on June 26, 1944, petitioner was paroled; that thereafter he spent some time in war work in Detroit; that after the war he returned to Huntington, where, on August 20, 1946, he was arrested on a charge of drunkenness; that because of such offense, the director of probation and parole, on October 28, 1946, revoked the parole whereupon the petitioner was recommitted to the penitentiary; that since

his recommitment, the said Skeen, Warden, unlawfully took 281 days of good time away from petitioner, and, on the recommendation of the director of probation and parole, added an additional year to his prison term. Petitioner further alleges that had he been granted good time for the time prior to his parole, during parole and since revocation of his parole, that he should have been discharged not later than July 14, 1947.

The Warden, in his answer, avers that the sentence was not void, but merely erroneous; and, further, that he has computed the time that petitioner has to serve in accordance with the statutes; and that on such computation the discharge date is not as that alleged in the petition for habeas corpus.

The petitioner, the warden, and Mr. Wells, clerk of the penitentiary, testified in the proceeding. And from the evidence adduced it appears that the petitioner, prior to the time of his parole, was earning not only ten days per month under Code, 28-5-27, but "extra good time" under Chapter 56, Acts of the West Virginia Legislature 1931, which added Section 27 (a) to Code, 28-5. And petitioner claims that he was entitled to good time, and extra good time, throughout the period of his parole.

According to Mr. Wells "The parole director recommended that Watts lose all good time while on parole plus one year. All good time on parole amounted to 281 days. One year, of course, is 365 days which actually made a total of 646 days good time lost. Now, under the procedure at that time Jay Watts' original expiration date was July 14, 1947. Extra outside time that he had earned amounted to two months and one day, which made his new expiration date May 13, 1947, plus 646 days good time lost that the parole director recommended that he lose." This witness stated that prior to October, 1947, the petitioner was being retained in the penitentiary under the foregoing recommendation; that in October aforesaid a ruling from the attorney general's office established the

procedure to be followed; that that ruling, as it applied to petitioner's case, in witness' own langauge was that "the good time that he [petitioner] had earned prior to parole was not to be allowed—the time from the date of his parole until the date of revocation was not to be allowed as any part of his sentence, and under that ruling is how this new expiration date [May 20, 1950] is arrived at." Watts' theory, according to Wells, was "that a man on parole was serving time just the same as if he was in the penitentiary, and that applied and counted on his sentence."

Was the action of the trial court in entering judgment on the jury's finding of "guilty as charged in the second count of this indictment", i.e., entering without breaking, a violation of the due process clauses of both the Federal and State Constitutions? In other words, was the judgment a nullity? Code, 62-3-2, provides, "* * * If he [defendant] refuse to plead or answer, and do not confess his guilt, the court shall have the plea of not guilty entered, and the trial shall proceed as if the acused had entered that plea * * * ." While the record fails to note a plea as to count two, it does show that the defendant appeared in answer to the indictment and entered a plea of "not guilty" to breaking and entering as charged in the first count. There is no question regarding petitioner's presence during the trial. Failure of the court to enter a plea of "not guilty", as provided by law, as to the second count, does not void the trial and judgment. The Common Pleas Court of Cabell County having jurisdiction over the person of the petitioner as well as the subject matter, the omission relied on cannot be reached by collateral attack. See 25 Am. Jur., Habeas Corpus, Secs. 26-28. Such failure at most renders the judgment of sentence erroneous. 14 Am. Jur., Criminal Law, Sec. 257, Note 4. "The trial of a criminal case without a plea to the indictment is erroneous, but for such error or irregularity in the exercise of jurisdiction the complaining party must seek his remedy in the same case by a motion for a new trial and direct appeal." *Winslow v. Green,*

(Ind. 1900), 58 N. E. 259. See, also, *State v. Moore, et al.,* 57 W. Va. 146, 49 S. E. 1015.

Has the petitioner shown, as of the date of his petition, that he had fully satisfied his sentence, and therefore entitled to release? To determine this issue it becomes necessary to consider the statutes involved.

Code, 28-5-27, provides: "Every convict sentenced to the penitentiary * * * during his term of confinement, shall be entitled to a deduction of his sentence as follows: * * * upon a sentence of ten years or more, ten days from each month. * * *"

A parole granted prior to the enactment of our present statute (1939) relating to probation and parole did not operate as a suspension of the sentence but simply as a permit "to go without the inclosure of the penitentiary", and while so at large the parolee was "deemed to be serving out the sentence imposed upon him by the court, and * * * entitled to good time the same as if he were confined in the penitentiary." Code, 28-5-28, repealed by Acts, 1939, c. 27, Sec. 21.

In addition to repealing Code, 28-5-28, mentioned in the proceeding paragraph, and Code, 61-11-22, dealing with release of minor convicts, and persons guilty of misdemeanors, Chapter 27, Acts of the 1939 West Virginia Legislature, added to Chapter 62 of the Code, a new article twelve, relating to probation and parole. On the previous day, effective from passage, Chapter 24, Acts of the 1939 West Virginia Legislature, repealed sections 29 and 30, Article 5, Chapter 28, of the Code, and amended and reenacted Code, 61-11-16, relating to the term of imprisonment for felony.

Attention is called to sections 18 and 19 of Article 12, Chapter 27, Acts of the 1939 West Virginia Legislature:

"Sec. 18. *Period of Parole.* The period of parole shall in all cases be the maximum period

for which, at the time of his release, the parolee was subject to imprisonment under his sentence.

"Sec. 19. *Violation of Parole; Revocation and Arrest.* * * * [that if a party has violated his parole] the director may revoke * * * and may require him to serve in prison the whole or any part of the maximum period for which, at the time of his release, he was subject to imprisonment under his sentence: * * *"

In the Acts of the West Virginia Legislature, 1943, Chapter 32, passed March 13, 1943, in effect ninety days from passage, Section 18 above was amended and reenacted to read:

"The period of parole shall in all cases be the maximum period for which, at the time of his release, the parolee was subject to imprisonment under his definite term or general sentence, as the case may be, but at any time after the expiration of his definite term or general sentence, less time deductions for good conduct and work as provided by law for inmates of the penitentiary, the director of probation and parole may, when in his judgment the ends of parole have been attained, release the parolee from further supervision and discharge him from parole, whereupon the term or sentence imposed shall be fully completed and satisfied."

It is apparent that under Sections 18 and 19, as presently constituted, that a parole now operates as a suspenison of the parolee's sentence and that the liberty so granted is no longer part of the sentence. On a violation of the terms of the parole under the new statute the convict may be compelled to serve the full unexpired portion of the term as of the date of his parole. A breach of the terms of the parole is ground for terminating the same and recomitting the offender to the penitentiary.

It is clear that the "good time" under Code, 28-5-27, is earned only while serving out one's sentence in the peni-

tentiary, and not during parole, although Section 18, of Chapter 27, Acts of the 1939 West Virginia Legislature, as amended and reenacted by Chapter 32, Acts of the 1943 West Virginia Legislature, seems to authorize the director, in the absence of a breach of parole, to take the parolee's good behavior into account in determining the termination date of the parole, and, if he believes the ends of parole have been attained, to release the parolee from further supervision, whereupon the term imposed shall be fully completed and satisfied. And, as we construe Sections 18 and 19, which, as we have shown, supersede Code, 28-5-28, the petitioner is clearly not entitled to "good time" allowance during his parole.

But, does breach and revocation of parole deprive parolee of "good time", potential or otherwise, to which, at time of parole, he may have been entitled against his sentence? Respondent takes the position that the provision in Section 19, to the effect that the director, upon revocation of the parole, "may require" the parolee "to serve in prison the whole or any part of the maximum period for which, at the time of his release, he was subject to imprisonment under his sentence" authorizes the cancellation of "good time" earned prior to parole.

The general rule appears to be that in the absence of statutory authorization the revocation of a parole does not operate as a forfeiture of any "good time" earned prior to the granting of the parole. 46 C. J. 1211, Sec. 82. The return of the parolee, after revocation of his parole, to the penitentiary to complete the unserved portion of his sentence is, under the express language of Section 19, in our opinion, subject to any potential good time earned prior to parole. See Chapter 24, Acts of the 1939 West Virginia Legislature, relating to the term of imprisonment for felony. The above-mentioned section is silent in regard to forfeiture of good time. The parolee having violated the terms of his parole, said Section 19 became operative, and he must be required "to serve in prison the whole or any part of the maximum period for which, *at the time of his*

*release,* he was subject to imprisonment under his sentence." (Italics supplied.) Therefore, we hold that the director had no authority to cancel "good time" prior to parole or to cancel "good time" to be earned by adding one year to petitioner's term. The petitioner, having been returned to the penitentiary to complete the unserved portion of his maximum sentence (Secs. 18 and 19, Chap. 27, Acts of the 1939 West Virginia Legislature) is entitled to have all "good time" and "extra good time" (Code, 28-5-27; Chap. 56, Acts of the 1931 West Virginia Legislature) less any points lost, which he has acquired both before and subsequent to the time he was out on parole, credited against the remainder of his sentence.

If we take the termination date of May 20, 1950, arrived at by Mr. Wells under the attorney general's ruling, and deduct the potential good time which petitioner had before he went on parole, and which we say should be credited against his sentence, the termination date would be cut back into the first half of 1949. However, the petitioner not having made a showing of sufficient good time for discharge under his petition of September 11, 1948, was not entitled on the record to release. The judgment of the circuit court discharging the writ must, therefore, be affirmed.

*Judgment Affirmed.*

KENNA, JUDGE, concurring:

The indictment in this matter is in three counts: (1) Breaking and entering with the intention of committing larceny; (2) entering without breaking for that purpose; and (3) simple grand larceny. Upon being arraigned, the defendant entered his plea of "not guilty of breaking and entering as charged in the within indictment." Since the first count is the only one in the indictment which charges unlawful breaking and entering, the accused's plea put in issue the material facts charged against him in that count alone. There is no issue joined on either count 2 or count 3. Consequently, the State went to trial only on count 1, and

it was therefore error for the trial court to accept a verdict of guilty on count 2 only. The issue made up was whether the accused both broke and entered: not whether he entered without breaking.

Code, 62-3-2, quoted and relied upon in the majority opinion, does not apply to the facts of this case. It applies only if the accused "refuse to plead or answer, and do not confess his guilt". In this instance the accused did not refuse to plead or answer nor confess his guilt. He pleaded not guilty to breaking and entering. The counts of an indictment are separate and distinct as to the offenses charged, and, in the discretion of the trial judge, they may be separately tried. Here the accused did not "stand mute", and our statute did not confer upon the trial court the right to make up the issue for him. In forming that issue, the court accepted his plea and the State went to trial. In felony indictments there are only two ways that the accused may plead in this jurisdiction: In proper person or, upon refusal to plead shown of record, a plea of not guilty may be entered for him by the court, under Code, 62-3-2. Here the defendant did neither as to the second and third counts of the indictment. I therefore believe there is no failure of the court to enter a plea of not guilty, as stated in the majority opinion. As stated, the court had no power to do so under the circumstances with which it was confronted. The error clearly lay in accepting a verdict under a count to which there had been no plea.

I agree that although the record showing constituted reversible error, it did not *void* the sentence, and hence does not entitle the petitioner to a write of *habeas corpus*.