CECIL V. WOODRING

*v.*

WILLIAM WHYTE, *Superintendent, Huttonsville Correctional Center*

(No. 14038)

LEWIS DALE METZ

*v.*

WILLIAM WHYTE, *Superintendent, Huttonsville Correctional Center*

(No. 14046)

STATE OF WEST VIRGINIA *ex rel.* GERRY LEE HITT

*v.*

WILLIAM WHYTE, *Superintendent, Huttonsville Correctional Center*

(No. 14047)

JOHN CASTO

*v.*

WILLIAM WHYTE, *Superintendent, Huttonsville Correctional Center*

(No. 14048)

JOE D. BALL

*v.*

WILLIAM WHYTE, *Superintendent, Huttonsville Correctional Center*

(No. 14057)

JACK EDWARD HARPER

*v.*

WILLIAM WHYTE, *Superintendent, Huttonsville Correctional Center*

(No. 14058)

ROBERT L. RINEHART, JR.

*v.*

WILLIAM WHYTE, *Superintendent, Huttonsville Correctional Center*

(No. 14078)

Decided February 28, 1978.

*James Kauffelt* for relators.

*Chauncey H. Browning,* Attorney General, *Gregory W. Bailey,* Assistant Attorney General, for respondent.

MILLER, JUSTICE:

Seven inmates of the Huttonsville Correctional Center filed original proceedings in habeas corpus which we have consolidated, since they contain the same issues. The central question is the construction of W.Va. Code, 28-5-28 (1977),[1] relating to partial commutation of a sentence for good behavior. Briefly, under this particular section, which became effective on July 1, 1977, two classes of prisoners are entitled to receive good time credit against their sentences. This statute also creates a classification committee which is directed to classify all prisoners "as soon as practicable."

The chief complaint made by the relators is that the statutory scheme is mandatory and the respondent warden has done nothing to implement it. Relators claim that under the statute they are entitled to release from

---

[1] Although this section deals with the West Virginia Penitentiary, it is clear that W.Va. Code, 28-5A-4, makes the laws governing the Penitentiary applicable to Huttonsville. A similar provision is found in W.Va. Code, 28-5C-4, relating to the West Virginia State Prison for Women at Pence Springs.

confinement. Several defenses are raised by the warden. The first is that the section is not mandatory, but merely directory, and for this reason no action has been taken. Pertinent portions of the statute are set out in the margin.[2]

The warden points to the first sentence of W.Va. Code 28-5-28, where the word "may" is found, as indicative that this section is directory and not mandatory.

---

[2] "In order to encourage prison discipline, a distinction may be made in the treatment of prisoners so as to extend to all such as are orderly, industrious and obedient, comforts and privileges according to their merit. The reward to be bestowed on prisoners for good conduct shall consist of such relaxation of strict prison rules and extension of social privileges as may be consistent with proper discipline. Commutation of time for good conduct, industry and obedience shall be granted by the warden and twenty days per month deduction shall be made from the term or terms of sentences of all prisoners in Class I, and ten days per month deduction shall be made from the term or terms of sentences of all prisoners in Class II as hereinafter provided, when no charge of misconduct has been sustained against a prisoner. ... For each sustained charge of misconduct in violation of any rule known to the prisoner, including escape or attempt to escape, any part or all of the commutation which shall have accrued in favor of the prisoner to the date of said misconduct may be forfeited and taken away by the warden upon the recommendation of the classification committee or the disciplinary committee which are hereinafter established unless, in case of escape, the prisoner voluntarily returns without expense to the State, such forfeiture shall be set aside by the warden. ...

"There is hereby established a classification committee composed of the warden, the chaplain, the director of prison industries, the prison physician and an associate warden.

"The classification committee, as soon as practicable shall classify all prisoners according to their industry, conduct and obedience in three classifications: Class I, Class II, Class III, and reclassify any of such prisoners from time to time as in their opinion the circumstances may require. The warden shall keep or cause to be kept a conduct record in card or ledger form and a calendar card on each inmate showing all classifications, changes of classifications and forfeitures of commutation of time and reasons therefor. As soon as practicable, the warden shall change the conduct records of prisoners now in the penitentiary to conform with said conduct record and calendar card.

"There is hereby established a disciplinary committee composed of the warden, prison physician and the chaplain. ..."

Whether a statute is mandatory or directory must be determined from the intention of the Legislature. *State ex rel. Board of Education of the County of Kanawha v. Melton,* ___ W.Va. ___, 198 S.E.2d 130, 136 (1973). Moreover, in the absence of a contrary intent on the part of the Legislature, the use of the word "shall" in a statute imparts a mandatory duty. *Terry v. Sencindiver,* 153 W. Va. 651, 171 S.E.2d 480, 483 (1969); *Board of Trustees of Policemen's Pension or Relief Fund of City of Huntington v. City of Huntington,* 142 W.Va. 217, 96 S.E.2d 225 (1956).

When we read the statute as a whole, as we must,[3] it appears that the first sentence serves as a preamble expressing a general legislative policy and establishing the reason why classification of prisoners is desirable. This sentence contains no language prescribing any action.

It is in those portions of the statute which provide for the establishment of the system of commutation of good time that we find the word "shall." The heart of the system is the third sentence, which reads:

> "Commutation of time for good conduct, industry and obedience shall be granted by the warden and twenty days per month deduction shall be made from the term or terms of sentences of all prisoners in Class I, and ten days per month deduction shall be made from the term or terms of sentences of all prisoners in Class II as hereinafter provided, when no charge of misconduct has been sustained against a prisoner."

That the Legislature was aware of the distinction between the words "shall" and "may" is demonstrated in that portion of the statute where the forfeiture of good time is accomplished by using the term "may." A further delineation was made by inserting the word "shall" in restoring forfeited good conduct time if an escaped prisoner returns without expense to the State.

---

[3] *Wooddell v. Dailey,* ___ W.Va. ___, 230 S.E.2d 466 (1976); *Spencer v. Yerace,* 155 W.Va. 54, 180 S.E.2d 868 (1971).

Also, we observe that the Legislature established both a classification and disciplinary committee. It left no discretion on this matter, as it not only established the committee but also designated their membership.

The only leeway as to implementation permitted under the statute is that classification of prisoners shall be accomplished "as soon as practicable." Obviously, this relates to the time when the act of classification must be completed, and does not imply there is discretion as to whether the classification may be made. Indeed, if the Legislature had intended the statute to be entirely discretionary, there would have been no need for this time of performance language.

We, therefore, are of the opinion that the statute is mandatory and requires the classification of prisoners according to its terms.

The warden claims that if W.Va. Code, 28-5-28, is determined to be mandatory, then we must find that it impliedly repealed W.Va. Code, 28-5-27.[4] As a general rule the law does not favor repeal of a statute by implication. *Zigmond v. Civil Service Commission,* 155 W.Va. 641, 186 S.E.2d 696 (1972); *Smith v. Siders,* 155 W.Va. 193, 183 S.E.2d 433 (1971); *State ex rel. Warder v. Gainer,* 153 W.Va. 35, 167 S.E.2d 290 (1969). However, it is also firmly established that if a later statute comprehensively covers the same subject, and by its terms is completely inconsistent with an existing statute, then the earlier

---

[4] W.Va. Code, 28-5-27, reads:

"Every convict sentenced to the penitentiary for a definite term, and not for life, who shall faithfully comply with all of the rules and regulations of the penitentiary during his term of confinement, shall be entitled to a deduction of his sentence as follows: Upon a sentence of one year, five days from each month; upon a sentence of more than one year, and less than three years, six days from each month; upon a sentence of not less than three years, and less than five years, seven days from each month; upon a sentence of not less than five years, and less than ten years, eight days from each month; upon a sentence of ten years or more, ten days from each month. When a prisoner has two or more sentences, the aggregate of his several sentences shall be the basis upon which his deduction shall be estimated."

statute must be deemed to be repealed. *State v. General Daniel Morgan Post No. 548, V.F.W.,* 144 W. Va. 137, 107 S.E.2d 353 (1959); *Harbert v. County Court of Harrison County,* 129 W.Va. 54, 39 S.E.2d 177 (1946). This general rule is stated in Vol. 1A, *Sutherland Statutory Construction* (Sands 4th ed.) § 23.09:

> "When a subsequent enactment covering a field of operation coterminous with a prior statute cannot by any reasonable construction be given effect while the prior law remains in operative existence because of irreconcilable conflict between the two acts, the latest legislative expression prevails, and the prior law yields to the extent of the conflict."

Here we are confronted with two separate provisions relating to computation of good time. Both sections provide for mandatory good time credits if the prisoner meets the standards provided. Yet the same amount of good time credit is completely different under the two statutes.

There is an irreconcilable difference in one of the fundamental aspects of the statute with the method by which the good time is computed. Under W.Va. Code, 28-5-27, the earlier statute, it is based on the length of the prisoner's sentence. Under the new statute, W.Va. Code, 28-5-28, it is based upon the prisoner's classification, which in turn is determined "by his industry, conduct and obedience."

We are unable to perceive any method whereby the two sections can be harmonized and, therefore, are compelled to conclude that the Legislature, by enacting W.Va. Code, 28-5-28, intended to repeal W.Va. Code, 28-5-27.[5]

The warden next contends that to construe W.Va. Code, 28-5-28, as mandatory, would render the statute unconstitutional under Article VI, Section 1 of the West

---

[5] W.Va. Code, 28-5-28, was a vacant section since 1939 when this particular section in the 1931 Code, which gave parole power to the Governor, was abolished by Chapter 27 of the 1939 *Acts of the Legislature,* which created a new Article on Probation and Parole.

Virginia Constitution. The argument advanced is that the Legislature, by failing to set the standards for each of the three classifications set out in the statute, has impermissibly delegated legislative powers to an administrative branch of the government.

We begin by noting the general rule that when the constitutionality of a statute is challenged, every reasonable construction must be resorted to by the courts to sustain its validity, and any reasonable doubt must be resolved in favor of its constitutionality. *State ex rel. Kanawha County Building Commission v. Paterno,* ___ W.Va. ___, 233 S.E.2d 332 (1977); *State ex rel. West Virginia Housing Development Fund v. Waterhouse,* ___ W.Va. ___, 212 S.E.2d 724 (1974); *State ex rel. Metz v. Bailey,* 152 W.Va. 53, 159 S.E.2d 673 (1968).

The circumstances under which this Court will find an impermissible delegation of legislative powers have been recently discussed at some length in *State ex rel. West Virginia Housing Development Fund v. Waterhouse, supra,* and *State ex rel. West Virginia Housing Development Fund v. Copenhaver,* 153 W. Va. 636, 171 S.E.2d 545 (1969). In *Copenhaver,* this Court stated that the delegation of power has to be of "purely legislative power" in order to render a statute constitutionally defective. Purely legislative power was described as the authority to make a complete law. In *Waterhouse,* this Court noted the modern trend is to allow the Legislature to set standards broadly and to require less exactness.

Both cases involved the right of the housing authority to determine the eligibility of families for government financed housing under broad standards such as "persons and families of low and moderate income", 153 W. Va. at 650, 171 S.E.2d at 553, and "persons who, because of age or physical disability, are found ... to require residential housing ...." 212 S.E.2d at 734.

At issue was the delegation of discretionary power to an administrative agency. Such is the present case, except that in addition to the standard of "industry, conduct and obedience," the Legislature has designated the

number of credit days per month to be given in each of the classes.

There is, to be sure, some ambiguity in the statute in connection with what prisoners are to be assigned in Class III. Viewing the statute as a whole, it seems reasonable that the Legislature did not intend to bestow on Class III prisoners any good time credit. The good time credits are only awarded to Class I and II prisoners.

This interpretation is further supported by the fact that the statute states that good time credit is given "when no charge of misconduct has been sustained against a prisoner." Obviously, there exists a third category of prisoners who, by virtue of their misconduct, are not entitled to any good time, and those would be Class III prisoners.

The only case that appears to directly discuss the issue of the sufficiency of a legislative standard which delegated the duty to prescribe a schedule of good time credits to an administrative agency is *People ex rel. Colletti v. Pate*, 31 Ill.2d 354, 201 N.E.2d 390 (1964). There, the Legislature had delegated to the Department of Public Safety the authority to prescribe "reasonable" rules and regulations for "the diminution of sentences on account of good conduct", as well as the amount of credit to be given. The Legislature required only that the rules and regulations be "reasonable." Yet, the court concluded that this standard was sufficient:

> "Under the circumstances we believe that the statutory standards, although minimal, were intelligible and sufficient to guide the Department of Public Safety in the performance of its duty to prescribe rules and regulations for the diminution of sentences on account of good conduct." 201 N.E.2d at 393.

We are of the view that W.Va. Code, 28-5-28, does set forth sufficient standards to aid the classification committee in establishing the classifications for good time credit and is therefore not unconstitutional as an improper delegation of legislative authority to an administrative body.

Several questions in regard to the application of the statute are raised by the parties. Relators contend that if the statute is deemed mandatory they are entitled to good time credit for each month that they have served on their sentence as they have not been found guilty of any misconduct. Further, they assert that the statute contemplates that credit for good time should be calculated in advance of serving the sentence and the entire amount should be deducted at the beginning of the sentence.

The contention that good time credit should be applied to the entire sentence in effect asks that we hold that the statute is retroactive. The general rule is that a statute is presumed to apply prospectively only. Retroactive application of a statute is warranted only where the legislative intent to do so is clearly indicated. *Kisner v. Fiori*, 151 W.Va. 850, 157 S.E.2d 238 (1967); Vol. 2, *Sutherland Statutory Construction* (Sands 4th ed.) § 41.04; 73 Am. Jur. 2d *Statutes* § 350, *et seq*. There may be some relaxation of this rule for a statute which is purely procedural or remedial in nature. *Consentina v. State Compensation Commissioner*, 127 W.Va. 67, 31 S.E.2d 499 (1944); *cf. Loveless v. State Workmen's Compensation Commissioner*, 155 W.Va. 264, 184 S.E.2d 127 (1971).[6]

Here the statute contains no language from which we could infer the legislature intended retroactive application. The statute is also not procedural because it confers a substantive right—the right to receive credit on the prison sentence if the good conduct standards are met. In *Wolff v. McDonnell*, 418 U.S. 539, 41 L. Ed. 2d 935, 94 S.Ct. 2963 (1964), and *Preiser v. Rodriguez*, 411 U.S. 475, 36 L. Ed. 2d 439, 93 S.Ct. 1827 (1973), good time credit was recognized as a valuable right which could not be removed without affording some procedural due process. The statute confers substantive rights and is therefore not retroactive.

---

[6] The *Loveless* rule as to non-retroactivity of remedial Workmen's Compensation statutes has been altered by this Court's holding in *Lester v. State Workmen's Compensation Commissioner*, ___ W.Va. ___, S.E.2d ___, (No. 13960) (1978).

Relators argue, however, that if the statute is not applied retroactively it would violate the Equal Protection Clauses of the State and Federal Constitutions. The basis for this claim is that relators, absent retroactive application, will receive less good time credits on their sentences than persons who receive the same sentence but who are incarcerated after July 1, 1977. We do not find merit in this argument.

The equal protection standard is mandated by the Fourteenth Amendment of the United States Constitution, where the admonition is: "No state shall ... deny to any person within its jurisdiction the equal protection of the laws." This State's Equal Protection Clause is found in Article III, Section 17 of the West Virginia Constitution. *State ex rel. Piccirillo v. City of Follansbee,* ____ W. Va. ____, 233 S.E.2d 419, 422 (1977).

*Piccirillo* dealt with a statutory restriction on the right to run for public office. This Court, using the federal equal protection standard, fond that a fundamental right was involved and then required that a compelling state interest be found to justify the statutory restriction. Finding none, the statute was found to violate the Equal Protection Clause. *Piccirillo* adopted as our State standard for equal protection the federal two-prong or two-tier rule (233 S.E.2d at 423), a holding that had been implicitly made in *Cimino v. Board of Education of County of Marion,* ____ W.Va. ____, 210 S.E.2d 485 (1974).

Neither *Piccirillo* nor *Cimino* attempted any detailed survey of the scope of our Equal Protection Clause. It is not necessary for purposes of this case to do so. The problem at hand is not that the statute operates facially in a discriminatory fashion, as it applies equally to all prisoners after its effective date. The "discrimination" occurs only when we contrast the maximum possible good time credit available under the new statute with the lesser good time credit that existed under the repealed statute.

It has been observed that, "Judicial inquiry under the Equal Protection Clause ... does not end with a show-

ing of equal application among the members of the class defined by the legislation. The courts must reach and determine whether the classifications drawn in a statute are reasonable in light of its purpose." *McLaughlin v. Florida*, 379 U.S. 184, 191, 13 L. Ed. 2d 222, 228, 85 S.Ct. 283, 288 (1964); *see Rinaldi v. Yeager*, 384 U.S. 305, 309, 16 L. Ed. 2d 577, 580, 86 S.Ct. 1497, 1499-1500 (1966).

As a part of any inquiry into the validity of statutory classification, it is necessary to determine the nature of the right affected by the classification. Statutory classifications that infringe on fundamental rights or constitutional freedoms are subject to much closer scrutiny and can only be sustained if a compelling state interest can be found to uphold the classification. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 49 L.Ed. 2d 520, 96 S.Ct. 2562 (1976); *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 36 L.Ed. 2d 16, 93 S.Ct. 1278 (1973); *Shapiro v. Thompson*, 394 U.S. 618, 22 L.Ed. 2d 600, 89 S.Ct. 1322 (1969); *State ex rel. Piccirillo v. City of Follansbee, supra*.

In the present case, we are considering a statute which creates good time credit. Good time credit is a right created by the legislature. It is not recognized as a fundamental right or a part of a constitutional freedom. *Wolff v. McDonnell, supra; McGinnis v. Royster*, 410 U.S. 263, 35 L. Ed. 2d 282, 93 S.Ct. 1055 (1973); Annot., 95 A.L.R.2d 1265 (1964).[7] Consequently, the Legislature's decision not to make enhanced good time credit retroactive need only be tested by whether it has a rational basis.

---

[7] There are cases that have struck down through the Equal Protection Clause statues which have not retroactively extended credit for time spent in jail on a subsequent sentence. *Laden v. Warden, Connecticut Correctional Institution*, 169 Conn. 540, 363 A.2d 1063 (1975); *Brown v. State*, 262 Ind.629, 322 N.E.2d 708 (1975); *In re Kapperman*, 114 Cal. Rptr. 97, 522 P.2d 657 (1974); *Ham v. State of North Carolina*, 471 F.2d 406 (4th Cir. 1973); *see* Annot., 77 A.L.R. 3d 182. These cases proceed on the theory that the denial of credit for time spent in jail impinges on the fundamental right of liberty. Consequently, such denial must be supported by a compelling state interest since an underlying constitutional right was involved.

Under the former statute good time credits were based on the length of the inmate's sentence. The new statute shifts the emphasis to a more discrete system of classification designed to encourage industry, good conduct and obedience. Prisoners in Class I are entitled to twenty days' credit a month, and those in Class II to ten days. The maximum good time credit allowed under the old statute was ten days a month. It is apparent that through this new classification system, the Legislature intended to promote the concept that an inmate, by altering his behavior, could earn increased good time credits.

The old system did not provide this type of incentive, and as a result there can be no rational basis that the new system could be extended back in time, since the inmates prior to July 1, 1977, never had the opportunity to mold their conduct to meet the new incentive classification. Any attempt to make the new system retroactive would be fraught with arbitrariness since the inmate lacked the incentive standard during the prior time period.

For these reasons, we conclude that there is a rational basis in the classification and no equal protection violation is involved.

Relators contend that even if the statute is not applied retroactively, they are entitled to have the entire amount of good time presently deducted from their remaining sentences. Plainly, the statute does not require this construction. The purpose of awarding good time credit is to encourage not only rehabilitative efforts on the part of the inmate by encouraging the industrious and orderly, but also to aid prison discipline by rewarding the obedient.

The basic tenor of the statute is that the initial classification will be made according to the inmate's record of industry, orderliness and obedience. Moreover, a change in an inmate's classification can occur if the inmate fails to maintain conduct commensurate with his existing

classification. The statute indicates that good time credit is awarded on a monthly basis.

The few courts that have addressed the problem of when and how much good time is credited on the inmate's record look to the particular period specified in the statute. *Rabon v. Eyman,* 18 Ariz. App. 523, 504 P.2d 54 (1972); *May v. Hoffman,* 179 Kan. 149, 293 P.2d 265 (1956). In *Rabon,* the statute called for "a deduction of two months in each of the first two years, four months in each of the next two years, and five months in each of the remaining years of the term." 504 P.2d at 55. The court concluded that the deduction was to be made at the end of each year. In *Hoffman,* the statute provided that a stated number of days a month be deducted as good time credit, and the court held that the calculations and credit were to be made at the end of each month. We conclude the appropriate credit period is the end of each month, since W.Va. Code, 28-5-28, provides for a "per month deduction."

Relators next argue that good time credit should be given while they are on parole. We do not agree. Again, the intent of the Legislature controls, and again we observe that one of the main objects of the good time credit is "to encourage prison discipline." Obviously, a person on parole is not subject to prison discipline and does not fall within the provisions of the statute.[8] The few cases that have considered the point, either in the context of parole or probation, have held good time credit is not available in these situations. *Harkey v. Page,* ___ Okla. Cr. ___, 451 P.2d 25 (1969); *Balkcom v. Gaulding,* 216 Ga. 410, 116 S.E.2d 545 (1960); *Swope v. Lawton,*

---

[8] In *Conner v. Griffith,* ___ W.Va. ___, 238 S.E.2d 529 (1977), we recognized that parole does not result in restraints on liberty and that a parolee is entitled to credit for the time spent on parole. In the earlier case of *Watts v. Skeen,* 132 W.Va. 737, 54 S.E.2d 563 (1949), it was determined under the prior good time credit statute that when parole was revoked the parolee did not lose the good time earned prior to parole. This same rule would be applicable to the new statute.

83 F.2d 814 (9th Cir. 1936); Annot., 95 A.L.R.2d 1265 at 1285.

Finally, relators urge that the State has been extraordinarily derelict in implementing the provisions of W.Va. Code, 28-5-28, which has had the effect of delaying their ability to obtain parole consideration. Accordingly, relators claim that immediate discharge is warranted. We have recently dealt with the subjects of extraordinary dereliction and relief in habeas corpus at length in *Rhodes v. Leverette*, ___ W. Va. ___, 239 S.E.2d 136 (1977), stating "that the writ of habeas corpus, because of its broad availability to challenge confinement contrary to the Constitution, cannot be limited to a particular form of remedial relief." 239 S.E.2d at 140-141.

Here relators contend that their immediate release is warranted by virtue of a particular construction they have of W.Va. Code, 28-5-28 (1977), which is that good time credit is available over their entire sentence and should be deducted in advance. We have rejected this construction. The question of extraordinary dereliction does not arise since this doctrine is limited to those cases where the State has persisted in longstanding violations of the relators' constitutional rights.

In none of the present cases do relators contend that, based upon the calculation of good time credit as we have interpreted the statute, the entire sentence would be served.

Relators do have the right to have the State promptly implement the classification and good time credit system, as required by W.Va. Code, 28-5-28 (1977). Should the State fail to do so with reasonable promptness, it may then create a situation where, in appropriate cases, discharge from custody becomes an available remedy.

*Writs denied.*