# IN THE SUPREME COURT OF IOWA

No. 11–0293

Filed May 4, 2012

**KRIS KOLZOW,**

  Appellee,

vs.

**STATE OF IOWA,**

  Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Henry County, Cynthia H. Danielson, Judge.

Offender serving a special sentence under Iowa Code section 903B.2 (2009) seeks further review of court of appeals decision denying him earned-time and jail-time credits. **COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.**

Thomas J. Miller, Attorney General, and William A. Hill, Assistant Attorney General, for appellant.

Philip B. Mears of Mears Law Office, Iowa City, for appellee.

**WATERMAN, Justice.**

This case presents questions of first impression relating to sex offenders serving prison time on a "revocation of release" from a "special sentence" under Iowa Code section 903B.2 (2009):[1] whether the maximum time incarcerated—two years for the first revocation—is reduced by (1) "earned-time credit" for good behavior under section 903A.2 or (2) by "jail-time credit" under section 903A.5. Kris Kolzow began serving his ten-year special sentence released on parole. A parole violation prompted his detention for five and one-half months in a county jail and work-release facility awaiting a hearing on whether to revoke his release. The administrative parole judge ordered Kolzow to prison "to serve a period not greater than two years as required by Code section 903B.2." The Iowa Department of Corrections (IDOC) refused to shorten Kolzow's prison time with earned-time credit or jail-time credit. The district court ruled both credits applied to reduce the maximum two-year period served in prison on the revocation of release. The court of appeals reversed, holding neither credit applied.

On further review, we interpret section 903B.2 by holding: (1) earned-time credit for good behavior under section 903A.2 accelerates completion of the ten-year special sentence, but IDOC is not otherwise required to apply the earned-time credit to reduce time incarcerated for a revocation of release; and (2) the two-year maximum for the first revocation of release includes time spent in detention awaiting the revocation of release hearing. The district court erred in applying earned-time credit, but correctly awarded jail-time credit against the two-year period Kolzow was incarcerated for his revocation of release. This

---

[1]All references are to the 2009 Code unless otherwise indicated.

interpretation preserves IDOC's statutory discretion to incarcerate parole violators to protect the public, without exceeding section 903B.2's maximum periods for their revocation of release.

Accordingly, we vacate the decision of the court of appeals and reverse in part and affirm in part the district court's ruling on credits.[2]

## I. Background Facts and Proceedings.

The parties stipulated to the facts relevant to this postconviction proceeding. In October 2007, Kolzow was convicted of multiple offenses. The district court sentenced Kolzow to a seven-year prison term, suspended the sentence, and placed Kolzow on probation. Three of Kolzow's convictions were sexual in nature,[3] triggering his ten-year special sentence under section 903B.2, entitled "Special sentence—class 'D' felonies or misdemeanors." The district court imposed three special sentences to run concurrently after he completed his term of probation.

On May 21, 2009, IDOC discharged Kolzow from probation. After entering into a parole agreement, Kolzow began his special sentence on May 29. On July 28, Kolzow was arrested for a parole violation. He was committed to the Wapello County Jail without bond. *See* Iowa Code § 908.2(2) ("Admittance to bail [in a parole revocation hearing] is discretionary . . . not a matter of right."). For the next five and one-half

---

[2]The parties stipulate Kolzow's two-year revocation period ended on January 12, 2012. Accordingly, this case is moot. We nevertheless reach the merits because the underlying question is one of importance that is likely to reoccur yet evade review. *See Dykstra v. Iowa Dist. Ct.*, 783 N.W.2d 473, 477 n.2 (Iowa 2010).

[3]Kolzow was convicted of three counts of intent to commit sexual abuse causing no injury in violation of Iowa Code section 709.11, an aggravated misdemeanor. He was also convicted of "dissemination and exhibition of obscene material to minors" a "serious misdemeanor" in violation of Iowa Code section 728.2, but this offense does not trigger a special sentence.

months, Kolzow remained detained in jail or a work-release facility awaiting his formal parole-revocation hearing.

On August 17, the administrative parole judge continued Kolzow's revocation hearing for sixty days and ordered Kolzow to reside at the Ottumwa Work Release Center. On November 6, the administrative parole judge again continued Kolzow's revocation hearing. On December 11, the judge ordered Kolzow to return to straight parole status. However, the ruling never went into effect because on December 8 Kolzow was arrested for a second parole violation. Kolzow was placed in the Wapello County Jail without bond.

On January 11, 2010, the administrative parole judge revoked Kolzow's parole and sent him to prison at the Iowa Medical Classification Center "to serve a period not greater than two years as required by Code section 903B.2." Kolzow's revocation period began that day. The State stipulates that the revocation period is not a mandatory minimum sentence and that IDOC has discretion, which it has previously utilized, to release offenders from prison with less than two years served for the first revocation of release.

IDOC applied earned-time credit to Kolzow's ten-year special sentence. Kolzow continued accruing earned-time credit throughout the parole-revocation proceedings. IDOC, however, did not apply earned-time credit or jail-time credit to reduce Kolzow's two years served in prison for this revocation of release.

On October 25, Kolzow filed an application for postconviction relief, alleging IDOC must apply earned-time credit and jail-time credit to shorten his prison time. The district court granted Kolzow's application. The district court concluded the legislature intended earned-time credit to apply to the two-year revocation period because it would be "an

anomaly" to apply the credit to the ten-year special sentence and not the two-year revocation period. The district court also awarded jail-time credit, concluding "the two-year revocation period [is] essentially similar to a sentence." The court of appeals reversed. The three-judge panel held earned-time and jail-time credit did not apply because the "revocation of release" period was not a "sentence."

We granted Kolzow's application for further review.

## II. Standard of Review.

We review the district court's construction of a statute in postconviction relief actions for correction of errors at law. *Anderson v. State*, 801 N.W.2d 1, 3 (Iowa 2011).

## III. Special Sentence Provisions.

In 2005, the legislature simultaneously enacted two special sentence provisions that commit offenders convicted of sex crimes[4] to IDOC custody for supervision after completion of the offender's sentence. *See* 2005 Iowa Acts ch. 158, §§ 39–40 (codified at Iowa Code §§ 903B.1–.2 (Supp. 2005)). Section 903B.2 states in full:

> A person convicted of a misdemeanor or a class "D" felony offense under chapter 709, section 726.2, or section 728.12 shall also be sentenced, in addition to any other punishment provided by law, to *a special sentence committing the person into the custody of the director of the Iowa department of corrections for a period of ten years,* with eligibility for parole as provided in chapter 906. The special sentence imposed under this section shall commence upon completion of the sentence imposed under any applicable criminal sentencing provisions for the underlying criminal offense and the person shall begin the sentence under supervision as if on parole. The person shall be placed on the corrections continuum in chapter 901B, and the terms and conditions of the special sentence, including violations, shall be subject to the same set of procedures set out in

---

[4]The special sentences apply to offenders convicted of sex abuse under chapter 709, incest under section 726.2, or exploitation of minors under section 728.12.

chapters 901B, 905, 906, and 908, and rules adopted under those chapters for persons on parole. *The revocation of release shall not be for a period greater than two years upon any first revocation*, and five years upon any second or subsequent revocation. *A special sentence shall be considered a category "A" sentence for purposes of calculating earned time under section 903A.2.*

(Emphasis added.) We rejected constitutional challenges to section 903B.2 in *State v. Wade*, 757 N.W.2d 618, 623–30 (Iowa 2008).

The offender is committed to IDOC custody either for life or ten years. Section 903B.1 applies to offenders convicted of a "class 'C' felony or greater" and the commitment term lasts "for the rest of the person's life." Section 903B.2 applies to offenders convicted of class "D" felonies or misdemeanors and imposes a ten-year commitment term. The provisions otherwise are textually identical.[5]

The offender begins this special sentence "as if on parole."[6] Iowa Code §§ 903B.1–.2. But, IDOC can seek to revoke the offender's parole,

---

[5]Iowa Code section 903B.1 states in its entirety:

A person convicted of a class "C" felony or greater offense under chapter 709, or a class "C" felony under section 728.12, shall also be sentenced, in addition to any other punishment provided by law, to a special sentence committing the person into the *custody of the director of the Iowa department of corrections for the rest of the person's life*, with eligibility for parole as provided in chapter 906. The special sentence imposed under this section shall commence upon completion of the sentence imposed under any applicable criminal sentencing provisions for the underlying criminal offense and the person shall begin the sentence under supervision as if on parole. The person shall be placed on the corrections continuum in chapter 901B, and the terms and conditions of the special sentence, including violations, shall be subject to the same set of procedures set out in chapters 901B, 905, 906, and chapter 908, and rules adopted under those chapters for persons on parole. *The revocation of release shall not be for a period greater than two years upon any first revocation*, and five years upon any second or subsequent revocation. *A special sentence shall be considered a category "A" sentence for purposes of calculating earned time under section 903A.2.*

(Emphasis added.)

[6]The legislature later amended sections 903B.1 and 903B.2 to authorize IDOC to begin the offender's sentence on work release or parole. 2009 Iowa Acts ch. 119, §§ 59–

which these statutes refer to as "a revocation of release."[7]  *Id.*  Unlike a revocation of traditional parole, the offender is not incarcerated for his remaining sentence.  Instead, these special sentence statutes prescribe maximum "revocation of release" periods.  An offender's first "revocation of release shall not be for a period greater than two years."  *Id.*  His second revocation is limited to five years.  *Id.*  Both statutes state, "A special sentence shall be considered a category 'A' sentence for purposes of calculating earned time under section 903A.2."  *Id.*  Neither provision expressly refers to the jail-time credit statute, section 903A.5.

We have not previously addressed whether earned-time or jail-time credits apply to reduce the maximum periods for a revocation of a release in either section 903B.1 or section 903B.2.

### IV.  Interpretation of Section 903B.2.

The parties stipulate Kolzow's ten-year special sentence is reduced by earned-time credits.  The fighting issues are whether his two-year prison time served for his revocation of release should have been reduced by earned-time or jail-time credit.

Kolzow contends he is entitled to both earned-time and jail-time credit under the operative statutory language.  The State argues the earned-time and jail-time credits do not apply to "revocation of release" periods because these periods are not the "special sentence."  The State argues the credits apply only to hasten the end of the ten-year special sentence without reducing the two-year period Kolzow was incarcerated

---

60 (codified at Iowa Code §§ 903B.1–.2 (Supp. 2009)) (authorizing the board of parole to "determine whether the person should be released on parole or placed in a work release program").  Because Kolzow began his sentence on parole, the amendments do not change our analysis.

[7]The decision to revoke an offender's release is made by an administrative parole judge subject to review by the Iowa Board of Parole.  Iowa Code § 908.6.

on a revocation of release. The State notes section 903B.2 does not use the phrase "special sentence" in reference to the "revocation of release" periods. *Id.* § 903B.2 ("The revocation of release shall not be for a period greater than two years upon any first revocation . . . ."). The court of appeals agreed with the State's position, concluding earned-time credit and jail-time credits did not apply because the revocation of release was not a "special sentence."

We reiterate the principles of statutory interpretation for this special sentencing statute:

> In interpreting section 903B.2, "our primary goal is to give effect to the intent of the legislature." *In re Detention of Betsworth,* 711 N.W.2d 280, 283 (Iowa 2006). "That intent is gleaned from the language of ' "the statute as a whole, not from a particular part only." ' " *Id.* (quoting *State v. Iowa Dist. Ct.,* 630 N.W.2d 778, 781 (Iowa 2001)). "In determining what the legislature intended . . . we are constrained to follow the express terms of the statute." *State v. Byers,* 456 N.W.2d 917, 919 (Iowa 1990). "When a statute is plain and its meaning clear, courts are not permitted to search for meaning beyond its express terms." *State v. Chang,* 587 N.W.2d 459, 461 (Iowa 1998). In determining plain meaning, "[s]tatutory words are presumed to be used in their ordinary and usual sense and with the meaning commonly attributable to them." *State v. Royer,* 632 N.W.2d 905, 908 (Iowa 2001).

*State v. Anderson,* 782 N.W.2d 155, 158 (Iowa 2010).

"When construing a statute, we assess the statute as a whole, not just isolated words or phrases." *Oyens Feed & Supply, Inc. v. Primebank,* 808 N.W.2d 186, 193 (Iowa 2011). "We look to both the language and the purpose behind the statute." *Id.* (quoting *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Mobil Oil Corp.,* 606 N.W.2d 359, 363 (Iowa 2000)). "If more than one statute relating to the subject matter at issue is relevant to the inquiry, we consider all the

statutes together in an effort to harmonize them." *State v. Carpenter*, 616 N.W.2d 540, 542 (Iowa 2000).

We will address the applicability of earned-time and jail-time credits separately.

**A. Earned-Time Credit.** Kolzow and the State each argue section 903B.2 unambiguously supports their respective position. Kolzow alternatively argues the statutory language is ambiguous and should be construed in his favor. The district court concluded section 903B.2 is ambiguous before awarding Kolzow earned-time and jail-time credit. The court of appeals disagreed and concluded the statute is unambiguous in denying Kolzow both credits.

We conclude the operative statutory language unambiguously provides that earned-time credit must be applied to accelerate the end of the ten-year special sentence in IDOC custody, rather than to shorten the revocation of release periods within that special sentence. IDOC retains discretion to incarcerate a parole violator for the maximum revocation of release period so long as the offender is released at the end of his special sentence.

1. *Section 903B.2 provides earned-time credit only for the ten-year special sentence.* We begin with the plain language of the statute. Section 903B.2 expressly provides that "[a] special sentence shall be considered a category 'A' sentence for purposes of calculating earned time." The provision only uses the phrase "special sentence" in referring to the ten-year IDOC custody period. Section 903B.2 imposes on offenders "a special sentence committing the person into the custody of the director of the Iowa department of corrections for a period of ten years." The next sentence provides "[t]he special sentence imposed under this section shall commence upon completion of the sentence

imposed under any applicable criminal sentencing provisions." Section 903B.2 does not use the phrase "special sentence" in describing the revocation of release periods: "The revocation of release shall not be for a period greater than two years upon any first revocation, and five years upon any second or subsequent revocation." Section 903B.2 plainly defines "special sentence" to mean the ten-year IDOC custody period, not the revocation of release of periods. Accordingly, the directive in section 903B.2 that earned-time credit is applied to the "special sentence" refers only to the ten-year IDOC custody period.

Our interpretation of the plain language of section 903B.2 is consistent with the purpose of the statute. *See State v. Walker*, 804 N.W.2d 284, 290 (Iowa 2011) (" 'We seek a reasonable interpretation which will best effectuate the purpose of the statute . . . .' " (quoting *State v. Johnson*, 528 N.W.2d 638, 640 (Iowa 1995))). The authorities make clear that the legislature's objective in enacting the special sentence provisions of section 903B.2 was to further protect the citizens of Iowa from sex crimes. *See Wade*, 757 N.W.2d at 625–26, 629. We noted the purpose of the special sentence in section 903B.2 is to ensure the sex offender's activities are supervised and monitored for compliance with the law for an additional ten-year period. *Anderson*, 782 N.W.2d at 159. "The risk of recidivism posed by sex offenders is 'frightening and high.' " *Wade*, 757 N.W.2d at 626 (quoting *Smith v. Doe*, 538 U.S. 84, 103, 123 S. Ct. 1140, 1153, 155 L. Ed. 2d 164, 183–84 (2003)). In *Wade*, we concluded the legislature is free to provide for special sentences for sex offenders because they "present a special problem and danger to society," given the "particularly devastating effects of sexual crimes on victims." *Id.* We emphasized the State's "strong interest in

protecting its citizens from sex crimes." *Id.* at 629; *see also State v. Kingery*, 774 N.W.2d 309, 313 (Iowa Ct. App. 2009) (same).

Section 903B.2 provides IDOC discretion to administer a community corrections program in a manner that best protects the public from the risks posed by sex offenders. The revocation of release periods are maximums that vest the Iowa Board of Parole with discretion to parole offenders who do not pose a threat to society. Section 903B.2 expressly incorporates a discretionary community corrections scheme:

> The person [serving a special sentence] shall be placed on the corrections continuum in chapter 901B, and the terms and conditions of the special sentence, including violations, shall be subject to the same set of procedures set out in chapter 901B, 905, 906, and 908, and rules adopted under those chapters for persons on parole. The revocation of release shall not be for a period greater than two years upon any first revocation, and five years upon any second or subsequent revocation.

Section 905.1(2) states community-based correctional programs are programs "including but not limited to an intermediate criminal sanctions program" under the continuum in section 901B.1 that are designed to "supervise and assist individuals . . . convicted of a felony, an aggravated misdemeanor . . . or who are on . . . parole in lieu of or as a result of a sentence." Section 901B.1(2) states an intermediate criminal sanctions program authorizes IDOC to transfer individuals between continuum levels two through four, ranging from supervised release on parole to short-term incarceration in jail or work-release facilities. Section 901B.1(4)(*b*) permits IDOC to seek parole revocation pursuant to chapter 908 and impose level five incarceration sanctions. Section 908.5(2) cross-references chapter 903B and mirrors the maximum periods of incarceration of two years upon a first revocation and five years upon a second or subsequent revocation. Applying earned-time

credit to shorten the revocation of release period would conflict with the legislature's grant of statutory discretion to IDOC to incarcerate an offender for the maximum periods prescribed (two years for first revocation; five years for second revocation).

Our construction does not undermine the legislative purpose of earned-time credits, which is to encourage prisoners to follow prison rules and participate in rehabilitative programs. *See United States v. Newby,* 11 F.3d 1143, 1148 (3d Cir. 1993) ("The good time credits system encourages a prisoner to observe prison rules and facilitates rehabilitation by allowing him to serve part of the sentence outside the prison."); *accord State v. Bruns,* 691 P.2d 817, 821 (Mont. 1984); *Woodring v. Whyte,* 242 S.E.2d 238, 245–46 (W. Va. 1978). Parole violators incarcerated on a revocation of release will remain motivated to behave in prison to secure earned-time credit that reduces the length of their ten-year special sentence and because the offender may be paroled from prison at any time during the two-year maximum period. Offenders will also be motivated to behave on the streets knowing a parole violation could put them behind bars for the maximum period for a revocation of release.

We find no textual support for Kolzow's interpretation that the period incarcerated on a revocation of release is a sentence within a sentence to be shortened by earned-time credit. Rather, incarceration on a revocation of release is simply a different placement on the corrections continuum during the same ten-year special sentence. To hold otherwise would undermine IDOC's ability to protect the public by incarcerating parole violators for up to the statutory maximum periods during the special sentence.

2. *Kolzow's statutory construction arguments are unpersuasive.* Kolzow raises several arguments for applying earned-time credit to reduce his time incarcerated on a revocation of release. We conclude the court of appeals correctly rejected each argument.

Kolzow first notes the statement in section 903B.2 that "[a] special sentence shall be considered a category 'A' sentence for purposes of calculating earned time under section 903A.2" is also found in section 903B.1, which applies to lifetime special sentences. He argues the statement in section 903B.1 cannot refer to the lifetime commitment sentence because earned-time credit is inapplicable to a lifetime sentence; therefore, the statement must apply earned-time credit to the revocation of release periods. We acknowledge sections 903B.1 and 903B.2 create a complementary scheme and should be construed uniformly. *See Carpenter*, 616 N.W.2d at 542 (construing complimentary scheme uniformly). But, we do not believe uniformity requires earned-time credit to be applied to revocation periods.

The court of appeals observed earned-time credit is calculated for lifetime imprisonment sentences in the event the sentence is commuted to a term of years:

> Kolzow's appellate brief, however, acknowledges that an offender's earned-time credit is calculated if the person's sentence is commuted. Therefore, earned-time credit may be calculated even though a person is subject to a special sentence for the rest of that person's life under section 903B.1. *Cf.* Iowa Code § 903A.2(5) (providing that for inmates serving a life sentence under section 902.1, earned time "shall be credited against the inmate's sentence if the life sentence is commuted to a term of years under section 902.2").

We agree. No specific statute contemplates commutation of a special sentence; however, the governor retains a general power of commutation under article IV, section 16 of the Iowa Constitution. Earned-time credit

might also be relevant in the event the lifetime special sentence is altered through subsequent legal proceedings. Accordingly, the legislature could provide for the possibility of earned-time credit under section 903B.1 if the lifetime sentence changes, without the credit applying to shorten the maximum revocation of release periods during the sentence.

Kolzow next argues he is entitled to credit because section 903A.2(1) provides all inmates are "eligible to earn a reduction of sentence in the manner provided in this section" except for mandatory-minimum sentences not listed in section 903A.5. He claims that, because his two-year incarceration period is not a mandatory minimum, section 903B.2 falls outside this exception to the general rule allowing earned-time credit. This argument fails because the earned-time credit applies to "sentences," and his revocation of release was not a sentence.

Kolzow's third argument is that the legislature intended IDOC to treat revocation of release periods like sentences for an aggravated misdemeanor under section 903.1(2), to which earned-time credit applies. He relies on the similarity in the sentencing language in each provision. *Compare* Iowa Code § 903.1(2) (the penalty for an aggravated misdemeanor "shall be imprisonment not to exceed two years"), *with id.* § 903B.2 ("[T]he revocation of release shall not be for a period greater than two years . . . ."). The court of appeals succinctly rejected this argument: "This case does not involve an aggravated misdemeanor or a sentence imposed under section 903.1. This code section has no application to the present case." We agree.

Kolzow next argues earned-time credit must be applied to shorten the period incarcerated on a revocation of release in order to avoid the absurd result of the ten-year special sentence ending before a five-year incarceration period could be completed on a second revocation of

release. He notes the ten-year special sentence can be served in 4.54 years if the offender obtains earned-time credit. We use the absurd results doctrine sparingly because of the risk of displacing legislative policy. *Anderson*, 801 N.W.2d at 7–8. We find no absurd result here. Some offenders—those who fail to accrue earned-time credit or who lose credits when they violate rules—will have enough time within their ten-year special sentence to spend five years incarcerated on a second revocation of release. Others will be released within the revocation period upon the end of their special sentence.

Finally, Kolzow claims we should apply the rule of lenity to the special sentencing statute and that any ambiguity be construed in his favor. Because we conclude section 903B.2 is unambiguous, the rule of lenity does not apply. *See id.* at 6 n.3.

We hold that IDOC need not apply earned-time credit to shorten the period incarcerated on a revocation of release. IDOC retains discretion to incarcerate a first-time parole violator for up to the two-year maximum period on a revocation of release or five-year period for a second or subsequent violation, so long as the offender is released upon the completion of his special sentence. Earned-time credits shall accrue to advance the end date of the ten-year special sentence.

**B. Jail-Time Credit.** We next address Kolzow's claim that his two-year period in prison should have been reduced by jail-time credit for the five and one-half months he spent in detention awaiting his parole-revocation hearing. The jail-credit statute is entitled "Time to be served–credit" and provides:

> An inmate shall be deemed to be serving the sentence from the day on which the inmate is received into the institution. If an inmate was confined to a county jail, municipal holding facility, or other correctional or mental facility at any time

prior to sentencing, or after sentencing but prior to the case having been decided on appeal, because of failure to furnish bail or because of being charged with a nonbailable offense, the inmate shall be given credit for the days already served upon the term of the sentence.

Iowa Code § 903A.5.

The defendant's jail time must be "on account of the offense for which the defendant is convicted." Iowa R. Crim. P. 2.26(1)(*f*); *accord Walton v. State*, 407 N.W.2d 588, 590–91 (Iowa 1987). Kolzow meets these requirements for jail-time credit. Kolzow was detained in jail or a work-release facility from July 28, 2009, until January 11, 2010, awaiting his parole-revocation hearing. He was not provided bail. The administrative parole judge ruled he violated his parole and ordered him to prison "on account" of the parole violation, "to serve a period not greater than two years as required by Code section 903B.2."

The State asserts Kolzow is not entitled to jail-time credit to reduce his prison time for a revocation of release because section 903A.5 does not expressly apply to detention pending parole-revocation or revocation-of-release hearings, only "sentencing." We have concluded that the revocation of release is not the "special sentence" to which earned-time credit applies. Moreover, sections 903A.5 and 903B.2 do not cross-reference each other. The State agrees that Kolzow's time in jail or work release counts day for day against his ten-year special sentence, but argues his prehearing detention does not count against the maximum period incarcerated for the revocation of release.

The problem with the State's position is that it permits IDOC to incarcerate offenders for a period greater than the two-year maximum for a first violation in section 903B.2. Section 903B.2 unambiguously states the offender's revocation of release "shall not be for a period greater than two years upon any first revocation, and five years upon any second or

subsequent revocation." An offender's release is revoked when he is detained in a jail or work-release facility awaiting his hearing. *Cf. State v. Rodenburg*, 562 N.W.2d 186, 189 (Iowa 1997) (permitting jail-time credit "for time served in state correctional institutions or detention facilities" awaiting sentencing hearing). Here, IDOC did not apply jail-time credit to Kolzow's revocation of release period, resulting in his incarceration longer than the two-year maximum allowed by section 903B.2 for a first violation. We cannot construe the plain statutory language in a manner that permits express maximum periods of incarceration to be exceeded.

We hold an offender serving a special sentence under section 903B.2 is entitled to jail-time credit against the maximum periods for revocation of release for each day he is detained in jail or a work-release facility awaiting his parole-revocation hearing. Each day spent in such detention also counts as a day serving the ten-year special sentence.

## V. Disposition.

We affirm the district court ruling awarding Kolzow jail-time credit and reverse the district court's ruling awarding him earned-time credit against his period incarcerated for the revocation of release. We vacate the decision of the court of appeals. Costs are taxed half against the State and half against Kolzow.

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART AND REVERSED IN PART.**