# IN THE COURT OF APPEALS OF IOWA

No. 14-1590
Filed September 23, 2015

**TEODORO BORREGO,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Dubuque County, Monica L. Ackley

(PCR hearing) and Thomas A. Bitter (plea and sentencing), Judges.

Teodoro Borrego appeals from the summary dismissal of his application

for postconviction relief.  **AFFIRMED.**

Mark C. Smith, State Public Defender, and Rachel C. Regenold,

Assisstant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant

Attorney General, Ralph R. Potter, County Attorney, and Brigit M. Barnes,

Assistant County Attorney, for appellee State.

Considered by Doyle, P.J., and Mullins and Bower, JJ.

**DOYLE, Presiding Judge.**

Teodoro Borrego appeals from the summary dismissal of his application for postconviction relief, contending there is a genuine issue of material fact as to whether his guilty plea to second-degree murder was knowing and voluntary. We affirm.

## I.     *Background Facts and Proceedings*

In 2011, Borrego was charged with murder in the first degree. Consistent with the terms of a plea agreement, Borrego pled guilty to second-degree murder. The plea memorandum provided Borrego would be sentenced to an indeterminate term not to exceed fifty years with a seventy percent mandatory minimum. The memorandum, signed by Borrego, specifically states: "Pursuant to Iowa Code section 902.12(1), the Defendant shall be denied parole or work release unless he has served at least seven-tenths of the maximum term of his sentence."

Borrego appeared with counsel for the plea and sentencing hearing, where the following colloquy took place:

> COURT: Okay. Mr. Borrego, are you aware that the maximum and mandatory penalty for murder in the second degree is a period of incarceration not to exceed 50 years?
> DEFENDANT: Yes.
> COURT: And by statute, are you aware that you are required to serve at least 70 percent of that sentence?
> DEFENDANT: Yes.
> COURT: Do you understand that the plea negotiations that you've entered into through the attorneys are not binding on the Court at the time of sentencing?
> DEFENDANT: Yes.

The district court proceeded to the factual basis for Borrego's plea, asking Borrego to explain in his own words the incident leading to his charge. The following colloquy took place:

> DEFENDANT: Well, what happened that night just we've been—she just been—for the last two years she's been seeing other guys and stealing my money and lying to me, and that night I come home and I was going to tell her just give me my $2300 that she owed me so I could move out, and when I walked in the room, she had a big grin on her face and there was a naked guy on her phone and I lost it.
> COURT: Okay. What happened then?
> DEFENDANT: I went a—I went across the hallway and I had a shotgun there and I just—out of rage, I just grabbed it and went in the room, shot her.

The court thereafter accepted Borrego's guilty plea and sentenced him per the plea memorandum.

Borrego filed an application for postconviction relief (PCR) challenging the voluntariness of his plea and contending he received ineffective assistance of counsel. Borrego subsequently filed an amended application through counsel. In an affidavit attached to the amended application, Borrego stated:

> When I entered my guilty plea in 2011, I was told by my lawyer to take the plea offer or else I would be sentenced to life in prison. I was not advised by my lawyer that I would have to serve 35 years of a 50 year sentence before I was eligible for parole. I thought that I would be eligible for parole. I also thought that I would receive day for day credit against my sentence for the time I spent in jail. I did not realize that I would not until I was informed differently by my counselor at Oakdale.
> If I had known that I was not eligible for parole for 35 years, I would not have pled guilty. I would have gone to trial. I felt pressured to plead guilty.

The State filed a motion for summary judgment of Borrego's application, claiming the grounds urged by Borrego in his application were in contradiction to the record and the guilty plea colloquy. Specifically, the State alleged, "Contrary

to Borrego's claims, the transcript of the plea proceedings show that Borrego in fact knew that he was required to serve at least 70 percent of his sentence at the time he pleaded guilty to murder in the second degree." Attached to the State's motion for summary judgment was an affidavit by defense counsel Thomas Goodman, stating in part:

> 5. I informed Mr. Borrego that he could go to trial on the charge of murder in the first degree but that the evidence was very strong in the State's favor. I also informed Mr. Borrego that if he were convicted of murder in the first degree, the penalty for that charge was life in prison without parole. I also informed Mr. Borrego that if he were convicted of murder in the second degree, the penalty for that charge would be fifty years in prison. I also advised him that the law required him to serve seventy percent of that fifty year sentence before he would be eligible for parole. I shared all of this information with Mr. Borrego's daughter and son as well.
> 6. In light of the strong evidence in favor of the State in this case, I advised Mr. Borrego that a sentence of thirty-five years was more beneficial to him than that of life in prison, and that, given the facts in this case, this was probably the best outcome he could get. I advised Mr. Borrego to plead guilty to murder in the second degree.
> 7. From the inception of the case, Mr. Borrego admitted his guilt. He was very remorseful and wanted to put the matter behind him. It was his decision to plead guilty to murder in the second degree.
> 8. At his plea proceeding, the Court asked Mr. Borrego if he knew that he would have to serve thirty-five years of his sentence. Mr. Borrego affirmed he knew this fact.

According to the State, "Goodman acted properly in giving his advice to Borrego."

Following a hearing, the district court entered an order granting the State's motion for summary judgment and dismissing Borrego's PCR application. The court found Borrego "has not produced any credible evidence that there are genuine issues of material fact for resolution at a trial" where "[t]he plea colloquy clearly identifies the necessary elements to create an understanding by the Court

that the defendant knowingly and voluntarily entered into the plea, understood the rights and consequences associated with the plea, and that a factual basis exists for the plea," and where "it was said to [Borrego] on three separate occasions during the plea colloquy and the sentencing that he would be required to serve 70 percent of this sentence prior to any possible consideration for parole."

Borrego filed a motion to reconsider,[1] which the court denied. Borrego appeals.

## II.    *Standard of Review*

We review postconviction proceedings for errors at law. *See Perez v. State*, 816 N.W.2d 354, 356 (Iowa 2012). *Everett v. State*, 789 N.W.2d 151, 155 (Iowa 2010). This includes summary dismissals of applications for postconviction relief. *See Manning v. State*, 654 N.W.2d 555, 560 (Iowa 2002). However, we conduct a de novo review of applications for postconviction relief raising constitutional infirmities, including claims of ineffective assistance of counsel. *Castro v. State*, 795 N.W.2d 789, 792 (Iowa 2011). "In determining whether summary judgment is warranted, the moving party has the burden of proving the material facts are undisputed. We examine the facts in the light most favorable to the nonmoving party." *Id.*

## III.    *Discussion*

Summary disposition of a postconviction application is authorized "when it appears from the pleadings, depositions, answers to interrogatories, and

---

[1] Borrego's motion was captioned a "motion to modify and substitute judgment"; the court ruled on it as a motion to reconsider.

admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Iowa Code § 822.6 (2013). Disposition under this provision is similar to the summary judgment procedure set forth in Iowa Rule of Civil Procedure 1.981(3). *See Manning*, 654 N.W.2d at 559-60.

Borrego contends his guilty plea "was not knowing, voluntary and intelligent because plea counsel failed to advise him that he would have to serve thirty-five years of his sentence before being paroled and that he would not receive day-to-day credit for his jail time." According to Borrego, these were "genuine issues of material fact that precluded summary disposition in this case." The State counters an evidentiary hearing is not required where Borrego's claim is directly contradicted by the record.

"A plea colloquy that covers the specific ground subsequently raised in a postconviction relief application would normally support summary judgment on those grounds." *Castro*, 795 N.W.2d at 795; *see Wise v. State*, 708 N.W.2d 66, 71 (Iowa 2006) (indicating that statements made to court in plea colloquy establish a presumption of the true facts on the record). Where the record directly contradicts the claim a guilty plea was unintelligent and involuntary, "the applicant bears a special burden to establish the record is inaccurate." *See Arnold v. State*, 540 N.W.2d 243, 246 (Iowa 1995).

In dismissing Borrego's application for postconviction relief, the district court detailed Borrego's communications with the court and his attorney regarding his plea. The court concluded:

The Applicant has not produced any credible evidence that there are genuine issues of material fact for resolution at a trial. The plea colloquy clearly identifies the necessary elements to create an understanding by the Court that the defendant knowingly and voluntarily entered into the plea, understood the rights and consequences associated with the plea, and that a factual basis exists for the plea based on the colloquy and the Court's reading of the Minutes of Testimony. The Applicant was able to make inquiry during the plea. He asserted his own recitation of the facts. He acknowledged his responsibility associated with his conduct. And the Court made the finding consistent thereto that he understood what was occurring.

The findings herein are further supported by the fact that defense counsel spoke with the Applicant pertaining to trial on the original charge of murder in the first degree, which would have resulted in life imprisonment in the event the jury found him guilty thereof. There is no credible evidence to support an allegation that the Applicant was not aware that he was poised to suffer further consequences more onerous in the event of trial.

The Applicant further asserts that he was not made aware of the fact that he would not receive day-for-day credit against his sentence for the time spent in jail. He indicated that if he had known he was not eligible for parole for 35 years, he would not have pled guilty but instead would have gone to trial.

That statement is not credible in light of the fact that he would have been facing life imprisonment in the event of a finding of guilt on the original offense. The Court further does not find it credible that he felt pressured to plead guilty as both he and his attorney indicated that on all occasions when questioned pertaining to the events, he acknowledged his responsibility and felt remorse. He spoke to law enforcement and acknowledged his responsibility. In fact, there was never a denial of the chain of events that lead to the death of the victim. Additionally, as previously stated, it was said to him on three separate occasions during the plea colloquy and the sentencing that he would be required to serve 70 percent of this sentence prior to any possible consideration for parole.

Upon our review of the record, including the plea memorandum, the plea and sentencing proceeding, and the affidavits of Borrego and his plea attorney, we conclude Borrego was informed of and agreeable to the plea agreement he reached with the State. Borrego signed a plea memorandum acknowledging that the State would recommend a fifty-year sentence and that he would be denied

parole or work release until he served seven-tenths of the maximum term of his sentence. Borrego's attorney stated Borrego admitted his guilt and it was Borrego's decision to plead guilty to second-degree murder given the evidence against him and the potential punishment he faced. Borrego's attorney also stated the court addressed Borrego's minimum punishment with him at the plea hearing, and "Borrego affirmed he knew this fact." "Our rules of summary judgment do not permit the nonmovant [Borrego] to rest on conclusory allegations in the pleadings in the face of a properly supported motion for summary judgment." *See Castro*, 795 N.W.2d at 795.

Specifically with regard to the day-to-day credit for time spent in jail, the State agrees Borrego is entitled to credit against his sentence for each day he spent in jail on this offense. *See* Iowa Code § 903A.5(1) ("An inmate shall be deemed to be serving the sentence from the day on which the inmate is received into the institution. If an inmate was confined to a county jail . . . at any time prior to sentencing, or after sentencing but prior to the case having been decided on appeal, . . . the inmate shall be given credit for the days already served upon the term of the sentence."); *Kolzow v. State*, 813 N.W.2d 731, 740 (Iowa 2012) (applying the provision).

Although we believe Borrego has or will receive appropriate credit for time served (as will be discussed below), under these circumstances, we conclude Borrego has failed to show, considering the evidence against him, he would have elected to proceed to trial on the first-degree murder charge with the possibility of receiving a sentence of life imprisonment. *See Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015) (noting applicant must prove both that (1) his counsel failed

to perform an essential duty, and (2) he suffered prejudice as a result of his counsel's failure); *State v. Straw*, 709 N.W.2d 128, 136 (Iowa 2006) (noting that to prove the prejudice prong of an ineffective-assistance-of-counsel claim in the context of a guilty plea, the applicant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial); *see also Hill v. Lockhart*, 474 U.S. 52, 60 (1985) (stating the applicant "alleged no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty" and therefore concluding the applicant did not satisfy the prejudice prong of his ineffective-assistance-of-counsel claim). Accordingly, his claim of ineffective assistance on this ground fails. *See State v. Polly*, 657 N.W.2d 462, 465 (Iowa 2003) (noting failure to prove either element by a preponderance of the evidence is fatal to a claim of ineffective assistance of counsel).

In any event, it appears the underlying credit issue is not properly before us. Borrego's challenge to day-to-day credit should first be raised in an administrative proceeding. *See* Iowa Code § 822.2(f); *see also State v. Millsap*, No. 08-1181, 2009 WL 2170246, at *1 n.1 (Iowa Ct. App. July 22, 2009) ("Millsap is challenging the calculation of credit to be applied to his sentence, which may be challenged in an administrative law action."). Moreover, according to the State, "[T]he Department of Corrections record in this case shows that the Dubuque County Sheriff has issued an affidavit of credit for time served and that the Department of Corrections has awarded the appropriate credit."

Unfortunately, the affidavit was not made part of the record, but clearly it would be fleshed out during an administrative proceeding on the issue.

For these reasons, we affirm the district court's ruling dismissing Borrego's application for postconviction relief.

**AFFIRMED.**